**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| TERRASMART, INC. f/k/a RBI SOLAR, INC., | : : : | Case No.: 1:24-cv-00198-JPH |
| Plaintiff, | : : | Judge Jeffery P. Hopkins, U.S.D.J. |
| v. | : : | Magistrate Judge Stephanie K. Bowman |
| ARCH INSURANCE COMPANY, | : : | |
| Defendant. | : : | |

**DEFENDANT ARCH INSURANCE COMPANY'S
ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant Arch Insurance Company ("Arch"), by and through its attorneys, Gordon Rees Scully Mansukhani, LLP and Connell Foley LLP, as and for an Answer to the Complaint filed by Plaintiff Terrasmart, Inc. f/k/a RBI Solar, Inc. ("Plaintiff") states as follows:

**NATURE OF THE ACTION**

1. Arch denies the allegations in Paragraph 1, except admits that the civil action captioned *Cypress Creek EPC, LLC, et al. v. Terrasmart, Inc. f/k/a RBI Solar Inc.*, Case No. 23STCV25381 is currently pending in the Superior Court of the State of California, County of Los Angeles, Central District (the "Cypress Creek Lawsuit").

2. The allegations in Paragraph 2 contain conclusions of law to which no response is required. To the extent a response is required, Arch denies the allegations in Paragraph 2, except admits that Arch issued commercial general liability policies to Terrasmart and/or its predecessors.

3.      The allegations in Paragraph 3 contain conclusions of law to which no response is required. To the extent a response is required, Arch denies the allegations in Paragraph 3.

4.      The allegations in Paragraph 4 contain conclusions of law to which no response is required.  To the extent a response is required, Arch denies the allegations in Paragraph 4.

## THE PARTIES

5.      Arch denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5.

6.      Arch denies the allegations contained in Paragraph 6 as plead, except admits that Arch is a Missouri Corporation with its principal place of business in Jersey City, New Jersey.

## JURISDICTION AND VENUE

7.      The allegations in Paragraph 7 contain conclusions of law to which no response is required. To the extent a response is required, Arch denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7.

8.      The allegations in Paragraph 8 contain conclusions of law to which no response is required. To the extent a response is required, Arch denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8.

9.      The allegations in Paragraph 9 contain conclusions of law to which no response is required. To the extent a response is required, Arch denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9.

**THE ARCH POLICIES**

10.     Arch denies the allegations in Paragraphs 10 through 10c as plead, except admits that Arch issued general liability insurance policies to Rough Brothers, Inc. commencing in 2015 and refers to said policies for their contents.

11.     The allegations in Paragraph 11 contain conclusions of law to which no response is required. To the extent a response is required, Arch denies the allegations contained in Paragraph 11 as plead and refers to the Arch Policies for their contents.

12.     Arch denies the allegations contained in Paragraph 12 and refers to the Arch Policies for their contents.

13.     Arch denies the allegations contained in Paragraph 13 as plead and refers to the Arch Policies for their contents.

14.     Arch denies the allegations contained in Paragraphs 14 through 14b as plead and refers to the Arch Policies for their contents.

15.     Arch denies the allegations contained in Paragraph 15 as plead and refers to the Arch Policies for their contents.

**THE CYPRESS CREEK LAWSUIT**

16.     Arch denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 and refers to the complaint filed in the Cypress Creek Lawsuit for its contents.

17.     Arch denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and refers to the complaint filed in the Cypress Creek Lawsuit for its contents.

18.     Arch denies the allegations in Paragraph 18 as plead, except admits that Terrasmart sold tracking systems to Cypress Creek in 2017 and 2018 and refers to the complaint filed in the Cypress Creek Lawsuit for its contents.

19.     Arch denies the allegations in Paragraph 19 as plead and refers to the purchase orders and the complaint filed in the Cypress Creek Lawsuit for their contents.  Arch denies knowledge or information sufficient to form a belief as to the truth of the allegations that the Tracking Systems were primarily manufactured in Ohio and/or were installed by Cypress Creek.

20.     Arch admits the allegations in Paragraph 20.

21.     Arch denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and refers to the complaint filed in the Cypress Creek Lawsuit for its contents.

22.     Arch denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 and refers to the complaint filed in the Cypress Creek Lawsuit for its contents.

23.     Arch denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and Arch refers to the complaint filed in the Cypress Creek Lawsuit for its contents.

24.     Arch denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and refers to the complaint filed in the Cypress Creek Lawsuit for its contents.

25.     Arch denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and refers to the complaint filed in the Cypress Creek Lawsuit for their contents.

### ARCH'S WRONGFUL FAILURE TO IMMEDIATELY DEFEND

26.     The allegations in Paragraph 26 contain conclusions of law to which no response is required. To the extent a response is required, Arch denies the allegations in Paragraph 26.

27.     The allegations in Paragraph 27 contain conclusions of law to which no response is required. To the extent a response is required, Arch denies the allegations in Paragraph 27.

28.     The allegations in Paragraph 28 contain conclusions of law to which no response is required. To the extent a response is required, Arch denies the allegations in Paragraph 28.

29.     Arch denies the allegations in Paragraph 29 as plead, except admits that it issued multiple correspondence to Terrasmart, including on January 31, 2024, and refers to the correspondence for its contents.

30.     The allegations in Paragraph 30 contain conclusions of law to which no response is required. To the extent a response is required, Arch denies the allegations as plead and refers to the correspondence for its contents.

31.     The allegations in Paragraph 31 contain conclusions of law to which no response is required. To the extent a response is required, Arch denies the allegations as plead and refers to the correspondence for its contents.

32.     Arch denies knowledge or information sufficient to form a belief as to the truth of the allegations that Terrasmart has incurred in excess of $500,000 defending against Cypress Creek's claims.  Arch denies the remaining allegations in Paragraph 32.

33.     Arch denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33.

34.     Arch denies the allegations in Paragraph 34.

## COUNT I
## DECLARATORY JUDGMENT

35.     Arch repeats and realleges each and every response to the allegations contained in the Complaint as though set forth fully and at length herein.

36.     The allegations in Paragraph 36 contain conclusions of law to which no response is required. To the extent a response is required, Arch denies the allegations in Paragraph 36.

37.     The allegations in Paragraph 37 contain conclusions of law to which no response is required. To the extent a response is required, Arch denies the allegations in Paragraph 37.

38.     Arch denies the allegations in Paragraph 38 as plead, except admits that it has agreed to defend Terrasmart under a reservation of rights letter and refers to such writing for its contents.

39.     Arch denies the allegations in Paragraph 39 as plead, except admits that Arch has not yet directly incurred any defense costs in connection with the Cypress Creek Lawsuit.

40.     The allegations in Paragraph 40 through 40E contain conclusions of law to which no response is required. To the extent a response is required, Arch denies the allegations in Paragraph 40 through 40E.

## COUNT II
## BREACH OF CONTRACT

41.     Arch repeats and realleges each and every response to the allegations contained in the Complaint as though set forth fully and at length herein.

42.     The allegations in Paragraph 42 contain conclusions of law to which no response is required.  To the extent a response is required, Arch denies the allegations in Paragraph 42.

43.     The allegations in Paragraph 43 contain conclusions of law to which no response is required.  To the extent a response is required, Arch denies the allegations in Paragraph 43.

44.     The allegations in Paragraph 44 contain conclusions of law to which no response is required.  To the extent a response is required, Arch denies the allegations in Paragraph 44.

45.     The allegations in Paragraph 45 through 45D contain conclusions of law to which no response is required.  To the extent a response is required, Arch denies the allegations in Paragraph 40 through 45D.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim)**

The Complaint does not state facts sufficient to state a claim upon which relief can be granted against Arch.

### SECOND AFFIRMATIVE DEFENSE
**(Failure to Perform Conditions Precedent and Subsequent)**

No coverage is available under the Arch Policies to the extent Plaintiff has failed to perform its obligations and was not in full compliance with all of the provisions of the Arch Policies.

### THIRD AFFIRMATIVE DEFENSE
**(No Duty to Defend or Reimburse Costs)**

Arch does not or may not owe a duty to defend or reimburse defense costs for any of the underlying claims referred to in the Complaint.

### FOURTH AFFIRMATIVE DEFENSE
**(Policy Terms, Exclusions, Conditions and Limitations)**

The claims asserted in the Complaint are barred in whole or in part by the terms, exclusions, conditions and limitations contained in the Arch Policies.

### FIFTH AFFIRMATIVE DEFENSE
**(Failure to Disclose Material Facts)**

The claims asserted in the Complaint are barred in whole or in part under the Arch Policies to the extent Plaintiff failed to disclose, concealed or misrepresented facts which were material to the risks undertaken by Arch.

### SIXTH AFFIRMATIVE DEFENSE
**(Waiver)**

Plaintiff's causes of action are barred in whole or in part by the doctrine of waiver.

## SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

Any recovery against Arch shall be reduced to the extent Plaintiff has failed to mitigate, minimize or avoid any damages it allegedly sustained, as may be required under the Arch Policies.

## EIGHTH AFFIRMATIVE DEFENSE

### (Limits of Liability)

Arch's obligations, if any, to defend, reimburse or indemnify Plaintiff is subject to any deductibles, self-insured retentions, per occurrence limits, annual aggregate limits, retroactive or retrospective premium agreements and/or other applicable limits of liability contained in the Arch Policies.

## NINTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

The claims asserted in the Complaint are barred by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

### (Equitable Estoppel)

The claims asserted in the Complaint are barred by the doctrine of equitable estoppel.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Laches)

The claims asserted in the Complaint are barred by the doctrine of laches.

## TWELVTH AFFIRMATIVE DEFENSE

### (Assistance, Cooperation and Settlements)

The claims asserted in the Complaint are barred to the extent Plaintiff failed to comply with the provisions of the Arch Policies concerning assistance, cooperation and settlements.

### THIRTEENTH AFFIRMATIVE DEFENSE
### (Subrogation, Indemnification and Contribution)

The claims asserted in the Complaint are barred in whole or in part under the Arch Policies to the extent Plaintiff has impaired or prejudiced any of Arch's rights to subrogation, indemnification and/or contribution.

### FOURTEENTH AFFIRMATIVE DEFENSE
### (No Legal Action Against Arch)

The claims asserted in the Complaint are barred in whole or in part to the extent the Plaintiff has not fully complied with all the terms contained in the Arch Policies.

### FIFTEENTH AFFIRMATIVE DEFENSE
### (Failure to Give Timely Notice)

Plaintiff's claims are or may be barred in whole or in part to the extent that Arch has not or did not receive proper and/or timely notice as required by the Arch Policies.

### SIXTEENTH AFFIRMATIVE DEFENSE
### (Professional Liability Exclusion)

Plaintiff's claims are or may be barred in whole or in part pursuant to the Professional Liability exclusion contained in the Arch Policies.

### SEVENTEENTH AFFIRMATIVE DEFENSE
### (Anti-Stacking Endorsement)

Plaintiff's claims are or may be barred or limited, in whole or in part, pursuant to the Anti-Stacking Endorsement contained in the Arch Policies.

### EIGHTEENTH AFFIRMATIVE DEFENSE
### (Business Risk Exclusions)

Plaintiff's claims are or may be barred in whole or in part pursuant to exclusions j., k., l., and m. contained in the Arch Policies.

## NINETEENTH AFFIRMATIVE DEFENSE
### (Expected or Intended Exclusion)

Plaintiff's claims are or may be barred in whole or in part pursuant to the Expected or Intended Injury exclusion contained in the Arch Policies.

## TWENTIETH AFFIRMATIVE DEFENSE
### (Contractual Liability Exclusion)

Plaintiff's claims are or may be barred in whole or in part pursuant to the Contractual Liability exclusion contained in the Arch Policies.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Known Loss/Loss in Progress)

Plaintiff's claims are or may be barred or limited, in whole or in part, pursuant to the insuring agreement of the Arch Policies and/or the known loss, loss in progress and/or fortuity doctrines apply.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (No Covered Damages)

The Arch Policies provide no coverage to the extent that the Plaintiff's claims do not seek damages by reason of liability imposed by law because of "bodily injury," "property damage," or "personal injury and advertising injury."

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (No Occurrence)

The Arch Policies provide no coverage to the extent that the Plaintiff's claims do not involve or constitute an "occurrence".

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (Voluntary Payments)

The Arch Policies provide no coverage to the extent that Plaintiff's claims involve damages or injuries for which an insured has voluntarily made payment, assumed an obligation, or incurred an expense without Arch's consent.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (Additional Separate Defenses)

Arch reserves the right to amend its Answer to the Complaint to assert such additional Affirmative Defenses and/or applicable policy terms, exclusions, conditions and limitations as may become apparent during the continuing course of discovery in this matter.  In addition, Arch reserves the right to amend its Answer to assert additional Affirmative Defenses to the extent the law of a state or district other than Ohio is applied and/or the law of Ohio changes or develops, thereby requiring such amendment.

## PRAYER FOR RELIEF

**WHEREFORE**, Arch respectfully requests that this Court deny Plaintiff's requested relief, dismiss the Complaint in its entirety with prejudice and declare Arch's rights and duties as follows:

1.      That this Court adjudge, determine and declare that Arch is not obligated to defend or pay for the defense of any claims alleged in the Complaint, and that Arch is not liable to reimburse, defend or indemnify Plaintiff for any damages, costs or payments incurred or to be incurred by Plaintiff, and that Plaintiff does not have any right to any other recovery in this matter under any applicable policy; and

2. That this Court adjudge, determine and declare that Arch is entitled to reimbursement of the costs and disbursements of this action, including but not limited to reasonable attorneys' fees; and

3. That this Court grant Arch such other and further relief as this court may deem just, proper and equitable.

## DEFENDANT ARCH INSURANCE COMPANY'S COUNTERCLAIM AGAINST PLAINTIFF TERRASMART, INC. f/k/a RBI SOLAR, INC.

Defendant, Arch Insurance Company ("Arch"), by and through its attorneys, Gordon Rees Scully Mansukhani, LLP and Connell Foley LLP, by way of Counterclaim against Plaintiff, Terrasmart, Inc. f/k/a RBI Solar, Inc. ("Plaintiff" or "Terrasmart") states as follows:

## THE CYPRESS CREEK CLAIMS

1. Upon information and belief, Terrasmart and Cypress Creek entered into a series of "Purchase Orders" from May 25, 2017, through October 15, 2018, for the production of separate Tracking Systems for twenty-one (21) solar sites owned or operated by Cypress Creek Renewables ("Cypress Creek") across multiple States.

2. On or about August 8, 2018, Terrasmart and Cypress Creek entered into a "Master Supply Agreement" in connection with the Tracking Systems.

3. Terrasmart designed and produced Tracking Systems to accommodate the specific needs of each site.

4. The Tracking Systems were delivered unassembled in large containers to each client, including Cypress Creek and its affiliates.

13

5.     The Tracking Systems were delivered and installed across the various sites between August 8, 2017, and February 1, 2019.

6.     Upon information and belief, Cypress Creek advised Terrasmart of certain pervasive design defects with the Tracking Systems across multiple sites and resultant damages no later than mid-2019 (the "Cypress Creek Claims").

7.     By letter dated March 26, 2020, Cypress Creek confirmed that there were warranty claims on thirty projects and Cypress Creek "request[ed] RBI notify its insurers with respect to each of these projects."

8.     By letter dated April 8, 2020, Terrasmart refused, advising that it "will be not be contacting our insurance company."

9.     By letter dated August 29, 2022, in which Cypress Creek objected to Terrasmart's response to the defect allegations, Cypress Creek in fact referenced a "history of relevant correspondence between the Parties" related to "myriad warranty claims" related to the Tracking Systems.  Cypress Creek also claimed that, in 2020, "following the first instances of extensive damage at several thin film sites, [Terrasmart] initiated fulsome repairs and covered all labor costs without objection."

10.     By letter dated October 18, 2022, Cypress Creek issued a demand for payment by Terrasmart to avoid litigation in connection with the warranty issues that were pending since at least 2019.

11.     Cypress Creek claimed that Terrasmart breached its express warranties as set forth in the Purchase Orders and certain "Materials Warranty Agreements" resulting in damages to Cypress Creek.

12.     Despite Cypress Creek's request that Terrasmart notify its insurers of these issues in 2020, notice was not provided to Arch of any claim (or potential claim) until December 14, 2022.

13.     At all times referenced herein, Terrasmart maintained professional liability insurance with various carriers.

14.     Due to Terrasmart's decision not to inform any of its insurance companies of the pending liability arising from the Cypress Creek Claims, Terrasmart's professional liability insurers disclaimed coverage for failure to timely report the claims.

15.     Arch began its investigation and sought information from Terrasmart regarding the Cypress Creek Claims through a reservation of rights letter issued on June 5, 2023.

16.     Arch disclaimed coverage to Terrasmart on August 4, 2023, pursuant to various terms, conditions and exclusions set forth in the Arch Policies, including, but not limited to, the claims being outside the scope of the insuring agreement, business risk exclusions, the professional liability exclusion, other insurance and breach of the notice conditions.

17.     On or about October 18, 2023, Cypress Creek filed the Cypress Creek Lawsuit.

18.     Although prior to the filing of the lawsuit the claims were all related to the design of the Tracking Systems, the Cypress Creek Lawsuit included a new allegation of negligent manufacturing.

19.     By letter dated January 31, 2024, Arch agreed to defend Terrasmart in connection with the Cypress Creek Claims, subject to a reservation of rights to disclaim coverage.

20.     Terrasmart did not respond to Arch's January 31, 2024 reservation of rights letter prior to commencing the subject lawsuit.

## THE WHITE STREET CLAIMS

21.     Upon information and belief, Terrasmart LLC (now part of Terrasmart) and ReNew Petra Construction LLC ("Petra") entered into one or more "Subcontract Agreements" concerning two solar project sites—one in Greensboro, North Carolina and one in Spartanburg, South Carolina—owned by White Street Renewables LLC and Limelight Solar LLC (collectively "White Street").

22.     On July 7, 2023, White Street issued correspondence to Terrasmart asserting claims of alleged breaches of contract and warranties related to defective Tracking Systems and work at the sites owned by White Street (the "White Street Claims").

23.     The demand letter alleges that Petra—on behalf of White Street—requested Terrasmart remediate these issues for some time, but there has been a slow response and, in some cases, no response at all.

24.     The demand letter also states: "We understand that Terrasmart has modified the design in a number of ways subsequently. We are concerned that Terrasmart provided a faulty design and that it is not possible to remediate the damaging effects of that design."

25.     Upon and information and belief, Terrasmart was on notice of the White Street Claims no later than February 21, 2022.

26.     Arch was notified of the White Street Claims on or about August 18, 2023.

## THE MITCHELL CLAIMS

27.     Upon information and belief, RBI Solar, Inc. (now known as Terrasmart) and CI-II Mitchell Holding LLC ("Mitchell Holding") entered into one or more Portfolio Supply Agreements concerning solar project sites in 2018.

28.     On January 23, 2023, Radian Generation ("Radian"), the asset manager for Mitchell Holding, issued a letter to RBI Solar and Terrasmart regarding a "Serial Failure Claim" for Tracking Systems installed pursuant to the Portfolio Supply Agreements (the "Mitchell Claims").

29.     Upon information and belief, Terrasmart was on notice of the Mitchell Claims no later than August 19, 2022.

30.     Arch was notified of the Mitchell Claims on June 1, 2023.

## TERRASMART'S PRIOR KNOWLEDGE OF TRACKING SYSTEM CLAIMS

31.     Upon information and belief, Terrasmart is aware of additional defect claims related to the Tracking Systems (such claims, including but not limited to the Cypress Creek Claims, the White Street Claims and the Mitchell Claims collectively referred to as the "Tracking System Claims").

32.     Terrasmart was aware by at least mid-2019 of the Tracking System Claims, or related issues and concerns raised by clients that would later result in claims.

33.     The Arch Policies provide that, as a condition precedent to coverage, that the insured must notify Arch as soon as practicable of an offense which may result of a claim, or an occurrence.

34.     Despite becoming aware of the alleged Tracking System failures and engaging with clients to discuss repair efforts in 2019, Terrasmart did not provide notice of a claim or potential claim to Arch until December 14, 2022.

35.     Acknowledging the gravity of the design defects and pending Tracking Systems Claims, upon information and belief, Terrasmart underwent a corporate restructuring in 2021 to prepare itself for the onslaught of pending liability.

36.     Terrasmart chose not to advise Arch of the Tracking Systems Claims before the Arch Policies incepted and each time an Arch Policy renewed.

37.     Terrasmart knew, or should have known, that identification of the Tracking Systems Claims was material information required under the conditions of the Arch Policies.

38.     Terrasmart knew, or should have known, that identification of the Tracking Systems Claims was material information required in the underwriting and procurement of the Arch Policies.

39.     Terrasmart negligently and/or intentionally withheld information related to the Tracking Systems Claims from Arch.

40.     Terrasmart's failure to notify Arch of the Tracking Systems Claims is a breach of the terms and conditions of the Arch Policies.

41.     Arch has been prejudiced by Terrasmart's breach of the terms and conditions of the Arch Policies.

42.     Had Terrasmart advised Arch of the Tracking Systems, Arch would have been able to protect itself and Terrasmart in a number of ways, including, but not limited to: a.) investigating the claims; b.) notifying Terrasmart's professional liability and/or business risk

insurance providers; c.) advising Terrasmart to cease sales of the Tracking Systems; d.) negotiating settlement before losses developed or increased; e) modifying the content of the Arch Policies; and/or f.) cancelling/non-renewing the Arch Policies.

## THE ARCH POLICIES

43.    Arch issued two series of successive commercial general liability policies to Gibraltar Industries, Rough Brothers, Inc. and Prospiant, Inc. Each company is either a parent or affiliate of Terrasmart.

44.    The following general liability policies were issued by Arch to Gibraltar Industries from April 1, 2014 to April 1, 2024:

a.   Policy No.: 11GPP4996400 (04/01/2014 to 04/01/2015).

b.   Policy No.: 11GPP4996401 (04/01/2015 to 04/01/2016).

c.   Policy No.: 11GPP4996402 (04/01/2016 to 04/01/2017).

d.   Policy No.: 11GPP4996403 (04/01/2017 to 04/01/2018).

e.   Policy No. 11GPP4996404 (04/01/2018 to 04/01/2019).

f.   Policy No.: 11GPP4996405 (04/01/2019 to 04/01/2020).

g.   Policy No.: 11GPP4996406 (04/01/2020 to 04/01/2021).

h.   Policy No.: 11GPP4996407 (04/01/2021 to 04/01/2022).

i.   Policy No.: 11GPP4996408 (04/01/2022 to 04/01/2023).

j.   Policy No.: 11GPP4996409 (04/01/2023 to 04/01/2024) (collectively the "Arch Gibraltar Policies").

45. The Arch Gibraltar Polices are each subject to per occurrence self-insured retention in the amount of $500,000.

46. The following general liability policies were issued by Arch to Rough Brothers, Inc. or Prospiant, Inc. from August 1, 2015 to April 1, 2024:

    a.  Policy No.: 11GPP0510100 (08/01/15 to 04/01/2016).

    b.  Policy No.: 11GPP0510102 (04/01/2016 to 04/01/2017).

    c.  Policy No.: 11GPP0510103 (04/01/2017 to 04/01/2018).

    d.  Policy No.: 11GPP0510104 (04/01/2018 to 04/01/2019).

    e.  Policy No.: 11GPP0510105 (04/01/2019 to 04/01/2020).

    f.  Policy No.: 11GPP0510106 (04/01/2020 to 04/01/2021).

    g.  Policy No.: 11GPP0510107 (04/01/2021 to 04/01/2022).

    h.  Policy No.: 11GPP0510108 (04/01/2022 to 04/01/2023).

    i.  Policy No.: 11GPP0510109 (04/01/2023 to 04/01/2024) (collectively the "Arch RBI Policies", together with the Arch Gibraltar Policies "the Arch Policies").

47. The Arch RBI Policies are each subject to a per occurrence deductible in the amount of $500,000.

48. The Arch Policies were negotiated, issued and delivered in the State of New York.

49. Each of the Arch Policies contains the same, or substantially similar, terms, conditions and exclusions.

50. The insuring agreement of the Arch Policies provides for the following:

*Section I – Coverages*

*Coverage A Bodily Injury And Property Damage Liability*

*1. Insuring Agreement*

*a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.[1] However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*

> *(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and*

> *(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.*

*No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.*

*b. This insurance applies to "bodily injury" and "property damage" only if:*

> *(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*

> *(2) The "bodily injury" or "property damage" occurs during the policy period; and*

> *(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.*

*c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An*

---

[1] As Amended by New York Changes Endorsement CG0163.

Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means "that bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

51.     The Arch Policies contain the following relevant Exclusions:

2. Exclusions

This insurance does not apply to:

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

j. *Damage to Property*

   *"Property damage" to:*

     (1) *Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;*

     (2) *Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;*

     (3) *Property loaned to you;*

     (4) *Personal property in the care, custody or control of the insured;*

     (5) *That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*

     (6) *That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

   *Paragraphs (1), (3) and (4) of this exclusion Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.*

   *Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.*

   *Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.*

   *Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".*

k. *Damage To Your Product*

 *"Property damage" to "your product" arising out of it or any part of it.*

l. *Damage To Your Work*

*"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard".*

*This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.*

m. *Damage To Impaired Property Or Property Not Physically Injured*

*"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*

      (1) *A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or*

> *(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*

> *This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.*

52. The Arch Policies contain the following Commercial General Liability Conditions:

> *SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS*

> *2. Duties In The Event Of Occurrence, Offense, Claim Or Suit*

>> *a. You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a claim. To the extent possible, notice should include:*

>>> *(1) How, when and where the "occurrence" or offense took place;*

>>> *(2) The names and addresses of any injured persons and witnesses; and*

>>> *(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.*

>> *b. If a claim is received by any insured, you must:*

>>> *(1) Immediately record the specifics of the claim and the date received; and*

>>> *(2) Notify us as soon as practicable.*

>> *You must see to it that we receive written notice of the claim as soon as practicable.*

>> *c. You and any other involved insured must:*

>>> *(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";*

>>> *(2) Authorize us to obtain records and other information;*

>>> *3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and*

>>> *(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.*

>> *d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.*

*e. It is agreed that where you report an "occurrence" to an insurer providing other than Commercial General Liability insurance, which later develops into a General Liability claim covered under this policy, failure to report such "occurrence" to us at the time of the "occurrence" shall not be deemed a violation of these conditions. However, you shall give immediate notification of the "occurrence" to us, as soon as it is reasonably possible that the "occurrence" is a General Liability claim.*

*f. It is agreed that knowledge of an "occurrence" by any of your agents, servants or "employees" shall not constitute knowledge by you unless one of your "executive officers" or anyone responsible for administering your insurance program has received such notice from the agent, servant or "employee".[2]*

*4. Other Insurance*

*If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:*

*a. Primary Insurance*

*This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.*

*b. Excess Insurance*

*(1) This insurance is excess over:*

*(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:*

*(i) That is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to "bodily injury" or "property damage" on other than a claims-made basis, if:*

*i. No Reactive Date is shown in the Declarations of this insurance; or*

*ii. The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance;*

*(ii) That is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for "your work";*

---

[2] As amended by endorsement 00 GL 0469 00 06 08.

*(iii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;*

*(iv) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or*

*(v) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.*

*(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.*

*(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.*

*(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:*

*(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and*

*(b) The total of all deductible and self- insured amounts under all that other insurance.*

*(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.*

*c. Method of Sharing*

*If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.*

53. The Arch Policies provide the following Definitions:

*SECTION VI – DEFINITIONS*

*"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:*

    a. *It incorporates your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or*

    b. *You have failed to fulfill the terms of a contract or agreement;*

*if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of a contract or agreement.*

*"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

*"Products-completed operations hazard":*

    a. *Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:*

        *(1) Products that are still in your physical possession; or*

        *(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:*

            *(a) When all of the work called for in your contract has been completed.*

            *(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.*

            *(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.*

        *Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.*

    b. *Does not include "bodily injury" or "property damage" arising out of:*

        *(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;*

        *(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or*

        *(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.*

Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

"Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

"Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

54. The Arch Policies contain the following Common Policy Conditions:

*COMMON POLICY CONDITIONS*

F. *Transfer Of Your Rights And Duties Under This Policy*

    *Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.*

    *If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.*

55. The Arch Policies contain the following Anti Stacking Endorsement, which modifies the Arch Policies as follows:

*ANTI STACKING ENDORSEMENT*

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE FORM*

*Under SECTION IV- COMMERCIAL GENERAL LIABILITY CONDITIONS and SECTION IV- LIQUOR LIABILITY CONDITIONS, the following condition is added:*

*Two Or More Coverage Forms Or Policies Issued By Us*

*If any "occurrence" or offense covered under this policy is also covered in whole or in part under any other coverage form or policy issued to you by us (or by any of our related or affiliated companies) including but not limited to prior policies issued to you by us, (or by any of our related or affiliated companies), the most that will be paid under all such coverage forms and policies covering the "occurrence" or offense is the single highest applicable limit of liability of one of the policies which cover the "occurrence" or offense. This provision does not apply to policies written by us (or by any of our related or affiliated companies) as insurance that specifically applies in excess of this insurance.*

56. The Arch Policies contain the following Broad Form Named Endorsement, which modifies the Arch Policies as follows:

*BROAD FORM NAMED INSURED ENDORSEMENT*

*This Endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE FORM*

*The Named Insured includes all subsidiaries, affiliated, associated, controlled or allied companies, corporations, or firms now or hereafter constituted in which there is common ownership of more than fifty percent (50%) and for which similar coverage is not separately provided.*

*The person or organization first named in Item 1 of the Declarations, by acceptance of this policy, is authorized to act and agrees to act on behalf of all persons or organizations insured under the policy with respect to all matters pertaining to the insurance afforded by the policy, including the giving or receipt of notice of cancellation, the payment of premiums and deductibles, and the receiving of return premiums, if any.*

*The insurance provided by this endorsement remains subject to paragraph 3. under SECTION II – WHO IS AN INSURED regarding newly acquired or formed organizations. Further, nothing in this endorsement shall be construed to affect any of our rights to amend the policy premium during the policy period upon the acquisition of a new subsidiary or other entity by the Named Insured. The first Named Insured shall report to us, as soon as practicable, any acquisitions, dissolution, mergers or ownership changes that occur at any time throughout the policy period.*

57. *The Arch Policies contain the following Endorsement:*

*EXCLUSION -- ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY*

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*The following exclusion is added to Paragraph 2. Exclusions of Section I -- Coverage A -- Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I -- Coverage B -- Personal And Advertising Injury Liability:*

*This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.*

*Professional services include:*

*1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and*

*2. Supervisory, inspection, architectural or engineering activities.*

*This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused t[INSERT he "personal and advertising injury", involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.*

## COUNT I
## DECLARATORY RELIEF

58.     Arch realleges each allegation set forth in the paragraphs above.

59.     Terrasmart has requested insurance coverage under one or more Arch Policies for various Tracking Systems Claims in several jurisdictions around the country.

60.     These coverage claims made by Terrasmart have given rise, and likely will continue to give rise, to disputes between and among Arch and Terrasmart, including without limitation disputes concerning the proper interpretation of various policy terms and the existence, scope and extent of coverage, if any, with respect to the Tracking System Claims under the Arch Policies.

61.     The Arch Policies contain various terms, conditions, provisions and exclusions which must be satisfied or found not to apply for coverage to exist with respect to the Tracking Systems Claims, which may include but are not limited to:

a.      Coverage is or may be barred to the extent that an insured has failed to satisfy the notice conditions as required pursuant to the Arch Policies related to the Tracking System Claims.

b.      Coverage is or may be barred to the extent that the Tracking System Claims involve damages or injuries for which an insured has voluntarily made payment, assumed an obligation or incurred an expense without Arch's consent.

c.      Coverage is or may be barred to the extent that an insured has failed to satisfy all duties and conditions precedent in connection with the Tracking System Claims, including without limitation compliance with the assistance and cooperation provisions set forth in the Arch Policies.

d.      Coverage is or may be barred to the extent that any person or entity seeking coverage in connection with the Tracking System Claims does not qualify as a named insured under the Arch Policies.

e.      Coverage is or may be barred pursuant to the insuring agreement of the Arch Policies and/or the known loss, loss in progress and/or fortuity doctrines apply.

f.      Coverage is or may be barred to the extent the Tracking System Claims do not constitute an "occurrence" resulting in "property damage" during the effective dates of the Arch Policies.

g.      Coverage is or may be barred pursuant to the Contractual Liability Exclusion contained in the Arch Policies.

h.      Coverage is or may be barred pursuant to the Professional Liability Exclusion contained in the Arch Policies.

i.   Coverage is or may be barred pursuant to the Expected or Intended Injury Exclusion contained in the Arch Policies.

j.   Coverage is or may be barred pursuant to the Business Risk Exclusions j., k., l., and m. contained in the Arch Policies.

k.   Coverage is or may be limited pursuant to the Anti-Stacking Endorsement contained in the Arch Policies.

l.   Arch seeks a judicial determination from this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et. seq., declaring whether and to what extent Arch has a coverage obligation, under the Arch Policies, to Terrasmart and/or other insureds in connection with the Tracking System Claims.

## COUNT II
## DECLARATORY RELIEF

62.   Arch realleges each allegation set forth in the paragraphs above.

63.   Pleading alternatively, there is an actual and justiciable controversy and Arch is uncertain as to its rights.  Arch states that misrepresentations, misstatements, omissions and/or concealments of facts, because they were known, material to the acceptance of the risk and/or material to the hazard assumed, and further because Arch in good faith would not have issued the Arch Policies had the true information been known, renders the Arch Policies inapplicable to various pending Tracking System Claims, and any claim brought or to be brought as a result thereof or to be made under the Arch Policies.

64.    Arch seeks a declaration that there is no coverage under the Arch Policies for various pending Tracking System Claims, and any claim brought or to be brought as a result thereof or to be made under the Arch Policies.

65.    Arch seeks a judicial determination from this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., declaring whether and to what extent Arch has a coverage obligation to Terrasmart and/or any additional named insureds under the Arch Policies.

## COUNT III
## RESERVATION TO ASSERT ADDITIONAL GROUNDS FOR RESCISSION, REFORMATION OR DECLARATORY JUDGMENT

66.    Arch realleges each allegation set forth in the paragraphs above.

67.    Arch's investigation with respect to potential coverage under the Arch Policies is ongoing.

68.    Arch brings this counterclaim for, inter alia, a declaration of its rights and obligations under the Arch Policies in order to promptly address the issues set forth herein.

69.    Additional independent grounds may be available to support rescission or a declaration that coverage is limited and/or not available with respect to the Arch Policies.

70.    By not specifically raising any such limitations or exclusions at this time, Arch expressly does not waive any of its rights under the Arch Policies, in equity and/or law.

71.    To the contrary, Arch's investigation is ongoing, and it continues to fully reserve all of its rights under the Arch Policies and/or at law, and specifically reserves all of its rights to

amend this Complaint to assert additional grounds to support rescission and/or a declaration that coverage is limited and/or not available with respect to the Arch Policies.

## PRAYER FOR RELIEF

**WHEREFORE**, Arch respectfully requests that this Court enter judgment against Plaintiff and in its favor as follows:

1. A declaration as to the respective rights and obligations of Arch and Plaintiff, and specifically a judgment declaring that Arch owes no coverage for the pending Tracking System Claims or any related claim made or to be made under the Arch Policies.

2. A declaration as to the respective rights and obligations of Arch and Plaintiff with respect to defense and indemnity coverage in connection with the Tracking System Claims.

3. A declaration that Arch is not obligated to defend or pay for the defense of any claims alleged in the Complaint, and that Arch is not liable to reimburse, defend or indemnify Plaintiff for any damages, costs or payments incurred or to be incurred by Plaintiff, and that Plaintiff does not have any right to any other recovery in this matter under any of the applicable Arch Policies.

4. A declaration that Plaintiff is liable to Arch in connection with the knowing misrepresentations, misstatements, omissions and/or concealments of facts in connection with applications for coverage under certain of the Arch Policies, and awarding Arch's damages, including compensatory and consequential damages, attorneys' fees and costs, plus pre-judgment and post-judgment interest, in an amount to be determined at trial.

5. That this Court adjudge, determine and declare that Arch is entitled to reimbursement of the costs and disbursements of this action, including but not limited to reasonable attorneys' fees; and

6.    That this Court grant Arch such other and further relief as this court may deem just, proper and equitable.

/s/ J. Brady Hagan
J. Brady Hagan        (0102834)
**GORDON REES SCULLY MANSUKHANI, LLP**
41 South High Street, Suite 2495
Columbus, Ohio 43215
T: (614) 340-5558
F: (614) 360-2130
bhagan@grsm.com

William D. Deveau  (pro hac vice)
**CONNELL FOLEY LLP**
Harborside 5
185 Hudson St., Ste. 2510
Jersey City, New Jersey 07311
T: (201) 521-1000
F: (201) 521-0100
WDeveau@connellfoley.com
*Counsel for Defendant Arch Insurance Co.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the U.S. District Court in the Southern District of Ohio on April 17, 2024 and served upon all counsel who have appeared in this matter and registered with ECF via the Court's electronic filing system. A copy has also been served via electronic mail upon the following:

William G. Geisen      (0083049)
Robin D. Miller          (0074375)
Cassandra L. Welch    (0095828)
**STITES & HARBISON PLLC**
100 E. Rivercenter Blvd., Ste. 450
Covington, KY 41011
(859) 652-7601
wgeisen@stites.com
rmiller@stites.com
cwelch@stites.com
*Counsel for Plaintiff Terrasmart, Inc.*
*f/k/a RBI Solar, Inc.*

*/s/ J. Brady Hagan*
J. BRADY HAGAN (0102834)